IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ARMIN BAJRAMOVIC,           ) | |
|                             ) | |
|   Plaintiff,                ) | |
|                             ) | |
|   v.                        ) | C.A. 09-293 Erie |
|                             ) | |
| BOROUGH OF NORTH EAST, NORTH ) | |
| EAST POLICE DEPARTMENT AND  ) | |
| SYLVAIN COTE, JAMES D. YANOSKO, ) | |
| JAMES JOBCZYNSKI, CHARLES   ) | |
| ROSEQUIST, JOHN DOE, JANE DOE, ) | |
| MARIA MOE, RICHARD MOE,     ) | |
| Individually and in their capacity as ) | |
| Borough of North East Police Officers, ) | |
|                             ) | |
|   Defendants.               ) | |

## OPINION

Presently pending before the Court is Defendants' "Motion to Dismiss Pursuant to F. R. C. P. 12(b)(6)" (Doc. 8). This case was originally filed in the Court of Common Pleas of Erie County and subsequently removed to this court by the defendants. Because plaintiff has withdrawn certain of his claims as more fully explained herein, and because he has plead enough factual allegations to support the remaining claims, Defendants' motion will be granted in part and denied in part.

We have jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1367.

## I. BACKGROUND

Defendants Sylvain Cote, James Yanosko, and James Jobczynski are officers in the police department of Defendant Borough of North East ("North East"). Complaint (Doc. 1-3), at ¶¶ 3-5. Defendants John Doe and Jane Doe are designated as unknown officers also employed

1

by North East. Complaint ¶ 6. Defendant Chief Charles Rosequist is the Chief of Police of the North East Police Department. Defendants Thomas Moe[1] and Maria Moe are unknown individuals "responsible for supervising the other Defendant Officers and/or Chief . . . employed by the Defendant, Borough of North East." Complaint ¶ 8. All of the defendants are being sued individually and in their official capacity. Complaint ¶ 9.

Plaintiff Armin Bajramovic alleges the following: On or about February 21, 2007, at approximately 10:00 p.m., plaintiff and his parents were visiting his fiancee and their young child, at his fiancee's mother's apartment in North East, Pennsylvania. Complaint ¶ 10. After 20 or 30 minutes, plaintiff's parents wanted to leave but plaintiff wanted to remain. Complaint ¶ 11. A verbal argument ensued between plaintiff and his mother, and plaintiff walked into the kitchen, grabbed a kitchen knife, put on his boots and walked outside. Complaint ¶ 12. Plaintiff's fiancee called a friend and told the friend to call 9-1-1. Complaint ¶ 13.

Officer Cote was the first to respond. Complaint ¶ 14. Officers Jobczynski and Yanosko responded later. Complaint ¶ 15. When Officer Cote arrived in the parking lot of the apartment complex, he saw plaintiff standing by a white car and plaintiff's father seated in the driver's side of the car. Officer Cote also observed plaintiff's mother standing outside on the passenger side. Complaint ¶ 16. Officer Cote immediately commanded the plaintiff to drop the knife. Complaint ¶ 17. Plaintiff did not drop the knife and walked away from the white car across the parking lot toward the door to the apartment. Complaint ¶ 18. Plaintiff further alleges that at all times, he held the knife pointing down. Complaint ¶ 19.

---

[1] The caption of the Complaint designates this unknown individual as "Richard Moe", while the Complaint itself designates him as "Thomas Moe." Complaint ¶ 8.

Officer Cote continued to order plaintiff to drop the knife, pointed his service revolver at the plaintiff and aimed the laser light at the plaintiff's chest area; the laser light indicates where the gun is aimed. Complaint ¶ 20. Plaintiff further alleges that without further provocation, Officer Cote fired his service revolver one time, striking plaintiff in the chest, and plaintiff immediately dropped to the ground. Complaint ¶ 21. After the shooting, and having watched plaintiff fall to the ground, Officers Cote and Jobczynski handcuffed plaintiff. Complaint ¶ 22. Plaintiff's mother approached Officers Cote, Jobczynski and Yanosko and Officer Cote ordered Officer Yanosko to cuff the plaintiff's mother. Complaint ¶ 23. Officers Yanosko and Cote then went toward the car and ordered plaintiff's father to lie on the ground; plaintiff's father did not react. Officer Cote grabbed plaintiff's father by the arm, put his leg behind plaintiff's father's leg, took him to the ground and handcuffed him. Complaint ¶ 24. Officer Cote then walked toward Officer Jobczynski and Officer Jobczynski asked Officer Cote whether or not he had struck the plaintiff; Officer Cote replied that he thought he had, and lifted up plaintiff's shirt and saw a hole in the plaintiff's chest. Complaint ¶ 25.

Plaintiff was transported from the scene to Hamot Medical Center by ambulance. Complaint ¶ 26. Plaintiff was hospitalized for thirty-one days. Complaint ¶ 28. Plaintiff alleges that as a direct and proximate result of the acts and omissions of the defendants, he suffered a traumatic tear of the roof of the left lower lobe, and a laceration by blast injury of the inferior portion of the left upper lobe which required him to undergo a left lower lobectomy, repair of laceration of the upper lobe, evacuation of clot, and intraoperative resuscitation. Complaint ¶ 27. As a result of the defendants' conduct, plaintiff alleges that he suffered physical injury, severe and prolonged pain and suffering, medical expenses, severe emotional distress, loss of enjoyment of

life, inconvenience, hardship, embarrassment, past disability resulting in a loss of earning capacity and lost wages, projected future disability resulting in a loss of earning capacity and a loss of wages, permanent scarring and permanent disability. Complaint ¶ 29.

### A. Claims against Cote, Yanosko, Jobczynski, John Doe and Jane Doe

First, we will summarize the allegations brought against the officers. At Count I, plaintiff brings a claim pursuant to 42 U.S.C. § 1983 against Defendants Cote, Yanosko, Jobczynski, John Doe and Jane Doe, seeking compensatory damages, alleging that they violated his rights under the Fourth Amendment to the United States Constitution and Article 1 § 8 of the Pennsylvania Constitution. Complaint ¶ 41. In Count II plaintiff brings a claim against these same individuals and seeks exemplary damages, alleging a violation of his constitutional rights and that the "intentional assault" was done "with actual malice . . willful and wanton indifference to and deliberate disregard for the constitutional rights of Plaintiff." Complaint ¶ 43. In Count IV plaintiff alleges violation of statutory civil rights pursuant to 42 U.S.C. § 1983 and alleges that the defendants had no lawful authority to use deadly force against the plaintiff and that it was done with actual malice toward him or with willful and wanton indifference to and deliberate disregard for his statutory rights. Complaint ¶ 48. In Count VI plaintiff names each in their individual capacities and alleges that the defendants conspired to violate his civil rights in violation of 42 U.S.C. § 1983 and seeks compensatory damages. Complaint ¶ 59. At Count VII plaintiff sues the officers in their individual capacities and similarly alleges conspiracy to violate his civil rights, but further alleges that the defendants acted with actual malice, and exhibited wilful and wanton indifference to and deliberate disregard for his constitutional rights in violation of 42 U.S.C. § 1983; plaintiff seeks exemplary damages at Count VII. Complaint ¶ 61-62.

The Complaint then alleges causes of action pursuant to state law. In Count IX, plaintiff alleges assault, claiming that the use of deadly force was without justification or provocation, and seeks compensatory damages. Complaint at ¶ 66-67. At Count X the plaintiff alleges assault; plaintiff claims that deadly force was done with actual malice and that the defendants exhibited willful and wanton indifference to and deliberate disregard for human life and the rights of plaintiff; he seeks exemplary damages. Complaint ¶ 69. At Count XI, Plaintiff alleges intentional infliction of emotional distress and seeks compensatory damages. Complaint ¶ 71-72. At Count XII Plaintiff alleges intentional infliction of emotional distress and seeks exemplary damages. Complaint ¶ 73.

### B. Claims against North East, supervisors and the Chief of Police, Charles Rosequist

As to the allegations against the Borough, police supervisors and the Chief of Police, plaintiff alleges as follows. At Count III plaintiff alleges violation of constitutional rights pursuant to a custom, policy, practices and procedures and seeks compensatory damages from defendants Borough of North East, the unknown supervisors Maria Moe and Richard Moe, and the Chief of Police, Charles Rosequist. Complaint ¶ 45. Specifically, the plaintiff alleges that the Borough of North East "has maintained a system of review of police conduct which is so untimely and cursory through deliberate indifference, as to be ineffective and to permit and tolerate the unreasonable and excessive use of force by its police officers." Complaint ¶ 38. Furthermore, Plaintiff alleges that such alleged policy caused the police officers "to believe that the unreasonable and excessive use of force would not be aggressively, honestly, and properly investigated with the foreseeable result of the officers being more likely to use excessive or unreasonable force against Plaintiff and others in the future." Complaint ¶ 39. Plaintiff alleges in

Count V that these same defendants, while acting within the scope of their employment, violated his constitutional rights (and those of others in the future) insofar as the defendant North East had a policy and practice to authorize officers to employ unreasonable and excessive force and the supervisors encouraged and tolerated said policies and refused to adequately train, direct, supervise or control the officers. Complaint ¶¶ 51-54. Count VI further alleges that these defendants were deliberately indifferent to the use of unreasonable and excessive force and that the deliberate indifference created a climate which facilitated the use of unreasonable and excessive force by officers of the North East Police Department. Complaint ¶¶ 56-57. At Count VIII it is alleged that the defendants conspired to violate plaintiff's civil rights and that the unreasonable and excessive use of force against the plaintiff was done pursuant to the custom, policies, practices and procedures of the Borough of North East Police Department and the deliberate indifference of the Chief of Police, Charles Rosequist and supervisors of defendant officers. Complaint ¶ 64.

## II. LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, Plaintiff has not plead "enough facts to state a claim to relief that is plausible on its face," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 547 (2007), meaning, enough factual allegations "to raise a reasonable expectation that discovery will reveal evidence of" each necessary element. Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir.2008); see also Kost v. Kozakiewicz, 1 F.3d 176,

183 (3d Cir.1993) (requiring complaint to set forth information from which each element of a claim may be inferred). In light of Federal Rule of Civil Procedure 8(a)(2), the statement need only "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam). "[T]he factual detail in a complaint [must not be] so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8." Phillips, 515 F.3d at 232; see also Airborne Beepers & Video, Inc. v. AT & T Mobility LLC, 499 F.3d 663, 667 (7th Cir. 2007).

When considering a Rule 12(b)(6) motion, the Court's role is limited to determining whether the plaintiff is entitled to offer evidence in support of the claims. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). The Court does not consider whether the plaintiff will ultimately prevail. See id. The defendant bears the burden of establishing that the plaintiff's complaint fails to state a claim upon which relief can be granted. See Gould Elecs. v. United States, 220 F.3d 169, 178 (3d Cir.2000).

## III. DISCUSSION

### A. Withdrawn Claims

At the outset, we note that in his "Opposition to Motion to Dismiss" (Doc. 11) Plaintiff withdraws a portion of his claims:

> 1. The Motion to Dismiss . . . would permit the continuation of counts I, II & IV against Officer Cote in his individual capacity.
>
> 2. Plaintiff takes no position on the attempts to dismiss all other counts and claims with the exception of the following: claims against the Borough of North East; claims against Officer Jobczynski under Count I, II and IV in his individual

7

capacity; claims against Officer Cote for intentional infliction of emotional distress and assault.

* * *

7. Plaintiff has also sufficiently alleged causes of action against the Officer Jobczynski under the same legal theories as Officer Cote. Officer Jobczynski handcuffed a man shot in the chest without rendering him aid until several minutes later, prolonging the injury and damage.

Opp. To M. To Dismiss at ¶¶1, 2, and 7. Plaintiff has submitted a proposed Order to that effect.[2]

Accordingly, those claims which plaintiff concedes are properly withdrawn will be dismissed: Count I, I, IV, IX, X, XI and XII against all defendants except Cote and Jobczynski in their individual capacity; Counts III, V and VIII against Chief Rosequist; and Counts VI and VII for conspiracy.

Defendants do not argue for dismissal of claims against officer Cote in his individual capacity at Counts I, II and IV.

We therefore must rule on the motion to dismiss as to the following: claims against the Borough of North East, claims against Officer Jobczynski at Counts I, II and IV in his individual capacity, claims against Officer Cote for assault (Counts IX and X), and claims against officer Cote for intentional infliction of emotional distress (Counts XI and XII)

### B. Remaining Constitutional claims

Plaintiff brings claims under 42 U.S.C. § 1983, which provides that every person who, under color of state law, subjects any citizen of the United States to the deprivation of any federal right shall be liable to the party injured.

---

[2] It is not clear if plaintiff concedes that he cannot recover monetary damages based upon a violation of the Pennsylvania constitution, or that the North East Police Department is not a proper party to this suit.

**(i) Excessive force**

**(a) Individual officers**

To state a claim for excessive force as an unreasonable seizure under the Fourth Amendment, a plaintiff must show that a 'seizure' occurred and that it was unreasonable." Curley v. Klem, 499 F.3d 199, 203 n. 4 (3d Cir.2007), quoting Abraham v. Raso, 183 F.3d 279, 288 (3d Cir.1999). "An officer seizes a person whenever he 'restrains the freedom of a person to walk away.' " Id., quoting Tennessee v. Garner, 471 U.S. 1, 7 (1985). Plaintiff has alleged that he was shot in the chest, fell to the ground and was handcuffed by the officer-Defendants; he has thus alleged a seizure, and defendants do not argue otherwise.        Plaintiff must also allege that the seizure was unreasonable. A seizure is reasonable under the Fourth Amendment if, under the totality of the circumstances, "the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivations." Graham v. Connor, 490 U.S. 386, 397 (1989). Factors to consider in making a determination of reasonableness include the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he actively is resisting arrest or attempting to evade arrest by flight. Id. at 396. In making a reasonableness assessment, a court also may consider the possibility that the persons subject to the police action are violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time. See Sharrar v. Felsing, 128 F.3d 810, 822 (3d Cir.1997). The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. Graham, 490 U.S.

at 396, citing Terry v. Ohio, 392 U.S. 1, 20-22 (1968).

Defendants argue that plaintiff has not alleged sufficient facts to support his claim of excessive force against Officer Jobczynski, the officer who handcuffed plaintiff after he was shot. Complaint ¶ 22. We disagree. Defendant argues that plaintiff does not allege any injury resulting from the handcuffing, however, Officer Jobczynski allegedly watched plaintiff fall to the ground after he was shot, handcuffed him, and after plaintiff's parents were handcuffed, he asked for confirmation from Officer Cote that plaintiff had been shot. It can be inferred from the Complaint that plaintiff is alleging that he did not render him aid, he allegedly delayed medical care and treatment, and he possibly prolonged plaintiff's injury and damage. These allegations give the defendant fair notice of what the claims are and the grounds upon which it rests. We find that plaintiff should be permitted to continue with this cause of action at Counts I, II and IV as to Officer Jobczynski.

### (b) Municpal defendants

A municipality cannot be held liable for the actions of its employees under § 1983 based upon respondeat superior. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978). This doctrine, in large part, is what prevents plaintiff from continuing with a good portion of his original allegations, as described supra. However, "the government as an entity is responsible under § 1983" when it "caused" the Plaintiff's injury; that is, "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." Id. at 694. Where, as here, Plaintiff alleges that the flawed policy is a failure to train, the municipality can be held liable when " 'that failure amounts to 'deliberate indifference ... [to the constitutional] rights of persons with whom the

10

police come in contact.' " Woloszyn v. County of Lawrence, 396 F.3d 314, 324 (3d Cir.2005) (citations omitted). There must also be a causal nexus, in that the "'identified deficiency in [the] training program must be closely related to the ultimate [constitutional]' injury.' " Id. at 325 (citations omitted). To sustain a § 1983 claim for municipal liability, the plaintiff must "establish a municipal custom coupled with causation – i.e. that policymakers were aware of similar unlawful conduct in the past, but failed to take precautions against future violations, and that this failure, at least in part, led to their injury." Beck v. City of Pittsburgh, 89 F.3d 966, 972 (3d Cir. 1996)

To survive a motion to dismiss, the plaintiff must "allege that a 'policy or custom' of [the defendants] was the 'moving force' behind the [constitutional] violation." Grayson v. Mayview State Hosp., 293 F.3d 103, 107 (3d Cir.2002) (citing Bd. of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 404 (1997). Despite Defendants' arguments that plaintiff has failed to allege any specific policies that authorized the actions Officers Cote and Jobczynski allegedly took, there is no requirement at the pleading stage for Plaintiff to identify a specific policy to survive a motion to dismiss. Carter v. City of Philadelphia, 181 F.3d 339, 358 (3d Cir.1999). This would be "unduly harsh" at this early juncture. Id.

Even so, plaintiff has alleged that the policies and practices were "the moving force, proximate cause, or affirmative link behind the conduct causing Plaintiff's injuries" (Complaint ¶ 55) and has described the custom and practice of the Borough as causing the officers "to employ the use of unreasonable and excessive force against its citizens and others would not be aggressively, honestly and properly investigated with the foreseeable results that the officers were more likely to use unreasonable and excessive force and continue to violate the constitutional

11

rights of its citizens and others, including the Plaintiff and others in the future." Complaint ¶ 51. Plaintiff has also claimed that Defendant Borough caused the officers' alleged use of excessive force by failing to train, direct and supervise the officers and that the Borough defendant demonstrated deliberate indifference to unconstitutional actions. Complaint ¶ 54. Accepting these facts, and all reasonable inferences therefrom, as true, Plaintiff could, after discovery, prevail on this claim by enunciating the specific policies and demonstrating how they violated his rights. For this reason, Defendants' motion to dismiss the excessive force claims against the Borough Defendants will be denied.

### C. State Law Claims

As explained previously, plaintiff has voluntarily withdrawn his claims for assault (Counts IX and X) and intentional infliction of emotional distress (Counts XI and XII) as to all defendants but for Officer Cote.

The Pennsylvania Political Subdivision Tort Claims Act ("PSTCA"), 42 Pa. Cons. Stat. § 8541, et seq. grants municipalities immunity from liability for any damages resulting from an injury to a person or property caused by an act of the City, its employee, or any other person, except in certain enumerated exceptions not applicable here. 42 Pa. Cons.Stat. Ann. § 8542. The immunity of the PSTCA also "extends to an employee of the City who is liable [in his individual capacity] for civil damages caused by acts which are within the scope of his office or duties." Renk, 641 A.2d at 292. But, the immunity for individual employees does not extend to conduct that amounts to actual fraud, crime, actual malice or willful misconduct. See id.; 42 Pa. Cons.Stat. Ann. § 8550 n. 17. If the alleged assault and intentional infliction of emotional distress either occurred outside the scope of employment or amounted to willful misconduct, then there is

no immunity under the PSTCA.

"Assault is an intentional attempt by force to do an injury to the person of another." Renk v. City of Pittsburgh, 641 A.2d 289, 293 (Pa. 1994). Because police officers have authority to use "such force as is necessary under the circumstances" to make an arrest, it is "the reasonableness of the force used in making the arrest" that "determines whether the police officer's conduct constitutes an assault." Id.

Although it is unsettled whether a tort for intentional infliction of emotional distress exists in Pennsylvania, Pennsylvania courts generally assume for purposes of analysis that the tort exists, and proceed to hold that to survive a motion to dismiss, the allegations must "at a minimum" correspond with the provisions of the Restatement (Second) of Torts § 46(1). Reardon v. Allegheny College, 926 A.2d 477, 487 & n. 12 (Pa. Super. 2007). Those provisions are that (1) the conduct is extreme and outrageous; (2) it is intentional or reckless; (3) it causes emotional distress; (4) that distress is severe. Restatement (Second) of Torts § 46(1). Extreme and outrageous conduct is conduct which is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." Strickland v. Univ. of Scranton, 700 A.2d 979, 987 (Pa. Super.1997). "It has not been enough that the defendant acted with intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort." Reardon, 926 A.2d at 488 (quoting Hoy v. Angelone, 554 Pa. 134, 720 A.2d 745, 753-54 (1998)). Generally, "the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to

13

exclaim, 'outrageous'!" Strickland, 700 A.2d at 987.

In addition, to prevail on an intentional infliction of emotional distress claim, a plaintiff must provide competent medical evidence to prove the existence of emotional distress. Kazatsky v. King David Memorial Park, Inc., 515 Pa. 183, 527 A.2d 988, 995 (1987); see Hunger v. Grand Central Sanitation,, 670 A.2d 173 (Pa. Super.1996) (holding that, to prevail on intentional infliction of emotional distress claim, a plaintiff must prove that the defendant's conduct was extreme and outrageous and that the plaintiff suffered a medically confirmed injury).

In light of this standard, the alleged assault, as well as conduct amounting to the tort of intentional infliction of emotional distress, both would constitute willful misconduct; Defendants' argument for immunity under the PSTCA is thus without merit. Plaintiff has alleged that Officer Cote physically injured him, intentionally assaulted him in a manner that was extreme, outrageous and unjustified, necessitating medical attention and causing emotional distress and physical manifestation of emotional distress. Plaintiff has alleged that he acted with deliberate disregard for his constitutional and statutory rights and therefore, Officer Cote knew his conduct was illegal. While the sufficiency of Plaintiff's medical evidence may be considered at a later stage of litigation, Plaintiff at this stage stated a claim for assault as well as intentional infliction of emotional distress against Defendant Cote in his individual capacity. The motion to dismiss these claims will therefore be denied.

### IV. MOTION TO AMEND MOTION TO DISMISS

On April 22, 2010, defendants filed a motion to amend their motion to dismiss. They aver that plaintiff's counsel had disclosed that on April 21, 2010, plaintiff Armin Bajramovic had been

14

declared incompetent to stand trial in his criminal case (arising out of the incident described herein), Court of Common Pleas of Erie County, Pennsylvania, Criminal Division at Case No. 111 of 2007, and that the next hearing date concerning his competence was set for February 24, 2011. As such, defendants have asked that we permit them to move to dismiss the action. Obviously, the finding of incompetency presents some challenges to both sides.

On May 3, 2010, we held a status conference in this case. Said conference was originally scheduled so that we could enter a case management order as required by Fed. R. Civ. P. 16(b). At the conference, the court inquired into whether plaintiff's counsel intended to have a substitute or guardian appointed pursuant to Fed. R. Civ. P. 25(b). Plaintiff's counsel requested that the case be stayed, rather than dismissed, pending final disposition of the competency issue, along with the possibility of having a guardian ad litem appointed for plaintiff. The parties also expressed interest in pursuing settlement. We will therefore issue an Order that the plaintiff file an Amended Complaint, consistent with this Opinion and amending the caption in an appropriate fashion, and that defendants file an answer to that Amended Complaint. Thereafter, assuming there is no objection at that time by plaintiff's counsel, we will enter an order staying the case until a further ruling by the Court of Common Pleas as to plaintiff's competence and in said order we will direct plaintiff's counsel to notify the court of any disposition as to competency.

## V. CONCLUSION

Because Plaintiff has withdrawn certain of his claims, as more fully described supra, those claims will be dismissed. Because Plaintiff stated a claim for excessive force in violation of the Fourth Amendment against the Officers Cote and Jobczynski in their individual capacities and municipal defendants Borough of North East, as well as state law claims for assault and

intentional infliction of emotional distress against defendant Officer Cote, and because defendant Officer Cotes does not have immunity from these state law claims under the Political Subdivision Tort Claims Act, Defendants' motions to dismiss these claims will be denied.   Plaintiff shall file an Amended Complaint and Defendants shall file an Answer. An appropriate order follows.

Date: *May 5, 2010*

*/s/ Maurice B. Cohill, Jr.*
Maurice B. Cohill, Jr.
Senior United States District Court Judge